352        APPELLATE COURTS OF ILLINOIS.

Com. Germania T. & S. Bk. v. W. M. Hoyt Co., 205 Ill. App. 352.

## Commercial Germania Trust & Savings Bank, Appellee, v. W. M. Hoyt Company, Appellant.

## Gen. No. 21,880.

1. PLEDGES, § 24*—*when pledgee of warehouse receipts loses lien as against third parties without notice.* Where the owner of certain coffee pledged the warehouse receipts for same with his creditor as security for a debt due the creditor, who thereafter surrendered the receipts to the owner to enable him to make delivery of the coffee upon a sale thereof, and took in lieu of such receipts a trust receipt signed by the owner, agreeing to pay over to the creditor out of the proceeds of the sale the amount of the creditor's debt, *held* that under the laws of Louisiana, wherein the transaction occurred, the creditor thereby lost his lien as against third parties without notice.

2. SALES—*when breach of trust receipt does not affect validity of sale of goods.* Where the owner of certain coffee pledged the warehouse receipts for same with his creditor as security for his debt to the creditor, who thereafter surrendered the receipts to the owner to enable him to make delivery of the coffee upon a sale thereof and took in lieu of such receipts a trust receipt signed by the owner, agreeing to pay over to the creditor out of the proceeds of the sale the amount of the creditor's debt, and the owner thereupon sold and assigned the invoice of the sale for value to a party without notice of the prior transactions, but failed to turn over to his creditor out of the proceeds received on such sale and assignment the amount due the creditor as required by the trust receipt, *held,* in an action by such party to recover against the buyer of the coffee for the purchase price, that such breach by the owner of the trust receipt in no way affected the validity of the sale of the coffee or the right of the owner to make collection of the proceeds thereof from the plaintiff.

TAYLOR, J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. J. J. ROONEY, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 18, 1917. Rehearing denied May 8, 1917.

TENNEY, HARDING & SHERMAN, for appellant; GUSTAF R. WESTFELD and WILLARD C. McNITT, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Defrees, Buckingham & Eaton, for appellee.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

The Commercial Germania Trust & Savings Bank of New Orleans brought suit in the Municipal Court of Chicago against W. M. Hoyt Company of Chicago to recover the purchase price of one hundred and thirteen bags of coffee. The case was tried before the court without a jury and judgment was entered in favor of the plaintiff for the amount of its claim, to reverse which this appeal is prosecuted.

The facts, so far as material, are: The Smith Brothers Company, of New Orleans, importers and sellers of coffee, borrowed money from William Brandt & Sons Company, London bankers, through the latter's representatives, Westfeldt Brothers, bankers and forwarders of coffee, also of New Orleans, and pledged as security a warehouse receipt for ninety-four bags of coffee. Afterwards on June 13, 1913, The Smith Brothers Company sold one hundred and thirteen bags of coffee to the defendant, payment to be made within ten days from the date of the invoice, which was dated July 1, 1913. The coffee was sold f. o. b. New Orleans, and was to be delivered to Westfeldt Brothers as forwarding agents of the defendant. In order to deliver the coffee to the defendant, The Smith Brothers Company secured from Westfeldt Brothers, as agents for William Brandt & Sons Company, the warehouse receipt covering the ninety-four bags and gave in lieu thereof the following trust receipt:

"Trust Receipt.

New Orleans, La., June 14, 1913.

"Received of Westfeldt Bros., Agts., the Bill of Lading or other documents or securities as enumerated below, held by the said Bank as collateral pledged

to secure advances made to the undersigned, and in consideration thereof, the undersigned hereby agrees to pay over to the said Bank or its assignees, and to specifically apply against the very same advances the proceeds of the sale of the property mentioned in said documents; or to deliver to the said Bank or its assignees the shipping documents or warehouse receipts representing the undermentioned goods within one day from the receipt thereof, this delivery being temporarily made the undersigned for convenience only, without novation of the original debt, or giving the undersigned any title thereto, except as trustee for the said Bank, and except to receive the avails thereof or the documents therefor for account of the said Bank.

"Crescent W. H. Cert. #1705 for 267 Bags Coffee. We want 94 bags for Hoyt.

THE SMITH BROS. CO., LTD.,
P. J. ORCHARD,
"S. B. C. K. 2 to 8 BA—4          Secty. & Treas."

The Smith Brothers Company, after receiving the warehouse receipt, took the ninety-four bags of coffee, which were stored in a warehouse, and nineteen other bags, which they owned, and delivered them to the railroad company, and received a memorandum ticket for the coffee in the name of Westfeldt Brothers, agents, and delivered the same to them. Upon receipt of this memorandum ticket, Westfeldt Brothers, as forwarding agents for the defendant, secured a bill of lading for the coffee and sent it to the defendant in Chicago. The coffee was not to be forwarded immediately, but was to be held in New Orleans until such time as it could be sent in a carload lot.

On June 17th, The Smith Brothers Company sold and assigned the invoice against the defendant for the price of the coffee, receiving the face value thereof. On the same day plaintiff notified the defendant of the assignment and requested that payment be made direct to it. About a week afterwards The Smith Brothers Company were forced into bankruptcy. On

the next day Westfeldt Brothers, as agents for William Brandt & Sons Company telegraphed the defendant that they would forward the coffee if the defendant would pay them for the ninety-four bags, and on the next day they telegraphed the defendant requesting that it hold the purchase price of the ninety-four bags for them, if defendant had not already paid plaintiff, and stated that they would protect defendant with bonds.    The defendant thereupon returned the bill of lading to Westfeldt Brothers, agents for William Brandt & Sons Company, and on June 30th sent a telegram to The Smith Brothers Company canceling the order for failure to ship the coffee according to contract.

Upon receipt of the bill of lading Westfeldt Brothers, as agents for William Brandt & Sons Company, disposed of the ninety-four bags of coffee and retained the proceeds thereof and returned the nineteen bags to The Smith Brothers Company.    The defendant having refused to pay the purchase price of the coffee to the plaintiff, this suit was brought.

It is obvious that the defendant could not cancel the contract for the purchase of the coffee in the manner indicated, and had no authority to return the bill of lading to Westfeldt Brothers, as agents for William Brandt & Sons Company.    But it is insisted that the rights of William Brandt & Sons Company, under the trust receipt, are superior to those of the plaintiff, because, it is urged, that under the law of Louisiana the rights of third parties are not protected against secret liens—that although the lien of William Brandt & Sons Company was secret and unknown to the plaintiff or the defendant until after the bankruptcy proceedings against The Smith Brothers Company, yet it is superior to plaintiff's claim based on the invoice.    (*Lallande v. His Creditors,* 42 La. Ann. 507; *Stern Bros. v. Germania Nat. Bank,* 34

356       APPELLATE COURTS OF ILLINOIS.

Com. Germania T. & S. Bk. v. W. M. Hoyt Co., 205 Ill. App. 352.

La. Ann. 1119; *Henderson v. Case*, 31 La. Ann. 215; *Bird v. Cockrem*, 82 La. Ann. 70; *In re Dreuil & Co.*, 205 Fed. 568; *Commercial Nat. Bank of New Orleans v. Canal-Louisiana Bank & Trust Co.*, 239 U. S. 520.)

In the *Lallande* case, *supra*, it was held that a factor authorized to sell the goods of his principal could not pledge the goods for his own debts so as to bind the principal.

The *Stern* case, *supra*, holds that where a matured negotiable instrument was placed in a third person's hands to collect, the latter could not pledge it to secure his personal loan and defeat the owner.

It was held in the *Henderson* case, *supra*, that the purchaser of a dishonored note from one not the owner nor authorized to sell did not acquire a good title as against the owner of the note.

In the *Bird* case, *supra*, the owner of past due promissory notes left them in the hands of a third person for safe-keeping. The latter pledged them as security for a personal loan. The court held that the owner's title was superior to that of the innocent pledgee.

It is clear that none of the above cases sustains the contention of the defendant that the rights of William Brandt & Sons Company, under the trust receipt, are superior to those of the plaintiff.

In the *Dreuil* case, *supra*, bills of lading covering certain cotton were pledged with a bank by the owner. Afterwards the bills of lading were surrendered and a trust receipt similar to the one in the case at bar was given to the bank. The owner of the property thereupon secured the cotton and deposited it in a warehouse and secured warehouse receipts in its own name, depositing these warehouse receipts with a second bank as collateral for a loan. The warehouse receipts were subsequently taken up by the owner and in lieu thereof a second trust receipt was given to the second bank. The owner obtained the cotton and

afterwards went into bankruptcy. In a contest between the two banks, it was held, that under the trust receipt given to the first bank, the owner had no authority to pledge the cotton to the second bank, and judgment was given in favor of the first bank, which was affirmed by the Circuit Court of Appeals. (211 Fed. 337.) A further appeal was prosecuted to the Supreme Court of the United States, where the judgments of the District Court and Circuit Court of Appeals were reversed and judgment entered in favor of the second bank. (*Commercial Nat. Bank of New Orleans v. Canal-Louisiana Bank & Trust Co.,* 239 U. S. 520.)

It is insisted that the reversal of the judgments by the Supreme Court was for the sole reason that under the Uniform Warehouse Receipts Act, warehouse receipts were negotiable, and that as the second bank receipted the warehouse receipts without notice of any claim of the first bank, its rights were superior to that of the first bank. We think, however, that the decision of the Supreme Court was not based alone on the provisions of the Uniform Warehouse Receipts Act, but it was also based on the ground of estoppel. In delivering the opinion of the court, Mr. Justice Hughes said, p. 524: "It is a familiar rule that one who has no title to chattels cannot transfer title unless he has the owner's authority or the owner is estopped. See Civil Code (La.) arts. 2452, 3142, 3145, 3146. It follows that, in the absence of circumstances creating an estoppel, one without title cannot transfer it by the simple device of warehousing the goods and indorsing the receipts. But if the owner of the goods has permitted another to be clothed with the apparent ownership through the possession of warehouse receipts, negotiable in form, there is abundant ground for protecting a bona fide purchaser for value to whom the receipts have been negotiated."

The court continuing, in discussing the Uniform Warehouse Receipts Act, said, p. 526: "It will be observed that 'one who takes by trespass or a finder is not included within the description of those who may negotiate.'" And on p. 527: "It was not the placing of the cotton in the warehouse in the usual course of business, but the negotiation of the receipts, that constituted the violation of Dreuil & Company's agreement with the Canal-Louisiana Bank. By the very terms of that agreement Dreuil & Company were to take the position of 'trustee' for the bank, with authority to receive 'the avails' of the goods or 'the documents' therefor for account of the bank, and being bound to apply the proceeds of sale to the bank's advances. * * * (p. 528). To repeat, it was the *negotiation* of the receipts that constituted the breach of trust. But after the Canal-Louisiana Bank had allowed Dreuil & Company to be clothed with apparent ownership through possession of the receipts, it cannot be heard to question the title of a bona fide purchaser for value to whom they had been negotiated. * * * (p. 529). It was because the Canal-Louisiana Bank clothed Dreuil & Company with the *indicia* of ownership that a bona fide purchaser for value was enabled to take title."

From this it appears that the Canal-Louisiana Bank, by reason of its clothing Dreuil & Company with the *indicia* of ownership, was estopped to assert its right against the second bank, the latter being a bona fide purchaser for value. In that case the only breach committed by Dreuil & Company was in the negotiation of the warehouse receipts, as it had authority to sell and collect the proceeds of the sale. In the case at bar, Westfeldt Brothers, agents for William Brandt & Sons Company, clothed The Smith Brothers Company with the *indicia* of ownership of the bags of coffee. The latter company, under the

trust receipt, was authorized to sell the coffee and collect the proceeds thereof, and the only breach, if any, committed by The Smith Brothers Company was in its failure to turn over the avails or proceeds of the sale which it received from the plaintiff, and this in no way affected the validity of the sale of the coffee, nor the transaction of The Smith Brothers Company in collecting the avails or proceeds thereof from the plaintiff.

Furthermore, the Supreme Court of Louisiana in the case of *Arbuthnot, Latham & Co. v. Richheimer & Co.*, 139 La. 797, 72 So. 251, held that secret liens, as provided for in a trust receipt similar to the one in the case at bar, could not affect the rights of innocent third parties. In that case the court said (pp. 253, 803): "The trust receipt at most was a private agreement between the parties, which, of course, did not affect third persons without notice."

In its last analysis, this is a case where William Brandt & Sons Company, who had a valid lien on the coffee, surrendered the property, and thereby gave up their lien and took in lieu thereof the trust receipt, which entitled them to receive from The Smith Brothers Company either the coffee or the proceeds of the coffee when sold. The coffee was sold, and William Brandt & Sons Company thereby became entitled to receive the purchase price as soon as The Smith Brothers Company collected it. The latter clearly had the right under the trust receipt to collect the purchase price from the appellant, or to obtain the "avails" of the sale by selling their claim to the bank. At the time they sold it they had a perfect right to receive the purchase price. There can be no doubt that the bank did actually purchase this claim against appellant, for the assignment distinctly directs the latter to pay the money "to the bank direct." The demand note was only for the latter's protection in case the claim was not paid in due course. The Smith

Brothers Company, unquestionably had the right, under the terms of the trust receipt, to obtain the proceeds of the sale by selling the claim, which they did, and therefore the bank, who bought the claim and paid full value for it, became its absolute owner. The Smith Brothers Company in turn, as soon as they sold the claim, held the proceeds subject to the terms of the trust receipt which they had given to William Brandt & Sons Company.

The judgment of the Municipal Court of Chicago is correct and it is affirmed.

*Affirmed.*

MR. JUSTICE TAYLOR dissents.